GIFFORD (GIBSON v.). See Case No. 5,395.

=======

## Case No. 5,409.
### GIFFORD v. KOLLOCK.
[3 Ware, 45;[1] 19 Law Rep. 21.]

District Court, D. Massachusetts. Jan., 1856.

SEAMEN—MINOR SHIPPING FOR WHALING VOYAGE — CONSENT OF PARENTS — CONTRACT WITHOUT TERMINATION OF TIME OR PLACE — USAGE OF PORT—TRADING VOYAGE—DESERTION — FORFEITURE OF WAGES—PALLIATING CIRCUMSTANCES.

1. Where a minor shipped for a whaling voyage, under the direction of his father, who furnished his outfit of clothing, the libel was rightly brought in the father's name.

2. A description of a whaling voyage, "to the North Pacific Ocean and elsewhere," is a defective description. A contract for a voyage that has no termination of time or place, is a void contract.

[Cited in Slocum v. Swift, Case No. 12,954.]

3. If the usage of a particular port, or a particular trade, authorizes an interpolation of the port of departure as the port of termination, this must be qualified by another implied term, that the return of the vessel to her home port shall be within a reasonable time.

4. A whaling voyage is properly a cruise for taking whales, and does not include a trading voyage to dispose of the cargo after it is obtained.

5. If the master undertakes such a voyage, it seems that men engaged for the whaling voyage are not bound to continue in the vessel.

6. By the ancient maritime law, constituting the common law of the sea, desertion by seamen, during the voyage, works a forfeiture of all wages previously earned. But the law is not imperative. The court may take into consideration palliating circumstances, not amounting to a justification, and mitigate the penalty to a reasonable indemnity to the owners.

[Approved in Coffin v. Shaw, Case No. 2,952. Cited in Swain v. Howland, Id. 13,661; The Balize, Id. 809.]

7. The only case of desertion in which the forfeiture is absolute of the whole wages, is when all the requisites of the statute have been strictly observed. St. July 20, 1790 [1 Stat. 133].

In admiralty.

Mackie and Cushman, for libellant.
Eliot and Stetson, for respondent.

WARE, District Judge. This is a libel filed by Benjamin R. Gifford, against Lemuel Kollock, of New Bedford, owner of the ship Alice Frazier, for the lay or share earned by his son, a minor in a whaling voyage. The description of the voyage in the shipping articles, it is agreed, was a whaling voyage to the North Pacific Ocean and elsewhere. Young Gifford shipped September 10, 1851, being then between fifteen and sixteen years of age, and continued in the ship till March 9, 1855, three years and seven months. On that day the ship being at Melbourne, in Australia, and it being the day before she sailed on her return to her home port, he deserted. During the whole period up to the time of his desertion, it is admitted that he performed his duties in an unexceptionable manner, and that his deportment was uniformly satisfactory to the master. Indeed, so well satisfied was the master with his conduct, as well as with his ability and fidelity as a seaman, that he was promoted from a foremast hand to be a boat-steerer, an office which, according to the usage of this trade, entitled him to an increased compensation.

The first objection to the libel made by the respondents is, that the suit is not rightly brought by the father, but that it should be in the name of the son, and that the recov-

1 [Reported by George F. Emery, Esq.]

ery, if any be had, should be for his benefit. My opinion is, that this objection cannot prevail. The shipping articles are not produced, but it is proved that the son signed them, and that the father witnessed his signature. It further satisfactorily appears, that the father made the contract and all the arrangements for the voyage, furnishing his child with an outfit of clothing for a three years' voyage. There is no pretence of evidence that he renounced his paternal authority or rights, nor is there any show of proof that the son claimed to be an emancipated minor, and entitled to his earnings, but the contrary is clearly inferable from the whole evidence. A parent is not, on slight circumstances, to be presumed to abandon his right of control over his children during their minority; and while he performs his parental duties of providing for their support and education, he is entitled to the proceeds of their labor. My opinion is that the suit is rightly brought in the parent's name.

The second objection relied on, and this is the important question involved in the case, is, that whatever lay or share, which is in the nature of wages, might be otherwise due to the parent, all his son's earnings were forfeited by his desertion at Melbourne. It is not claimed that the statute forfeiture has been incurred. But then it is said that, independent of the statute, a forfeiture is incurred under the common and ancient maritime law. It is certainly true, that desertion does, by the maritime law, work a forfeiture of all wages previously earned in the course of the voyage.[2] The reply of the libellant to this is in substance, a denial of the fact. It is contended that the voyage, according to the just interpretation of the contract, terminated de facto at Melbourne, and there can be no desertion after the voyage is at an end.

It is admitted that the voyage described in the shipping articles, was "a voyage to the North Pacific Ocean and elsewhere." Whatever objection there may be to the vagueness of the term elsewhere, in the description of a common trading or freighting voyage, it does not seem to apply with so much force to a whaling voyage. Such a voyage may, perhaps, be properly enough described as a cruise on the high seas in search of whales. They must be sought where they are to be found, and, from their migratory habits, they are not always to be found in the same parts of the sea. The nature and object of the voyage does not admit of any particular description of the localities intended to be

visited. But the objection in this case is of a different character. The voyage described contains no terminus. The enterprise for which young Gifford engaged, may be said to have been completed when the vessel was filled with oil. But the contract does not say when or where the voyage shall end. An engagement for a voyage that has no termination in time or place, cannot be a binding contract. Now, it is not denied that the cruise for whales, the enterprise for which Gifford engaged, terminated at Melbourne. Nothing remained to be done but to dispose of the cargo. But this constituted no part of the service for which the crew engaged. When the cargo is brought into port, it is the part of the owners to convert it into money and distribute the proceeds.

After the cruise was ended the vessel went to Sydney and Melbourne, in Australia, and at the latter port disposed of part of her cargo. It does not distinctly appear from the evidence, whether the object in going to these ports was to sell her cargo or to obtain supplies, but it seems that, at least in part, the object was trade. It is on this ground argued that the voyage properly terminated there. The enterprise, the object of the voyage, so far as the engagement of the crew extended, was accomplished.

It was stated at the argument that, in shipping papers of vessels engaged in the whale fishery, it is an understood term of the contract, that the voyage terminates on the arrival of the ship in her home port. If it is so, it ought to be so expressed. But supposing this term to be interpolated, it must in all fairness be qualified by another understood term; that is, when the vessel is full, and a return cargo is obtained, the vessel shall return to her home port with no unnecessary delay. If, on her return, she should touch at one or more ports on her way, and dispose of a part of her cargo without materially prolonging the voyage, a court might not readily hearken to a complaint on the part of the crew. But it is to be remembered that when the cruise is at an end, the seamen cease to earn wages; and that it belongs to the owners to dispose of the cargo for the common benefit of all interested. If the master deviates from his course home, and goes to a foreign port to seek a market for his oil, this is a departure from the voyage for which the seamen engaged. It is the commencement of a trading voyage. If he may deviate to seek a market in one port, it is difficult to say that he may not in two or more, and the period of service for the crew be indefinitely prolonged, without any addition to their compensation. This, it seems to me, would be such a breach of the contract on the part of the master, as would liberate the crew from their obligation to continue in the ship. But the evidence with regard to their stopping at the ports of Sydney and Melbourne, whether it was a deviation from the course of the return voyage, and whether it was exclusively or mainly for the

[2] In all times since the revival of commerce in the middle ages, desertion has been held to incur a forfeiture of wages. Consulate de la Mer (Transl. of Baucher) c. 268. It appears from several chapters of the Consulate of the Sea, that in early ages the service of seamen was considered as in part, at least, a military service. Chapters 169–178. And by some of the old ordinances, desertion is punished with the severity of military law.

purpose of trade, is not so full and clear that I feel prepared to place the decision of the cause on this point.

But even in this question, admitting the construction of the contract contended for, that the termination of the voyage was the arrival of the vessel at her home port; and further, that there was no deviation that would excuse the seaman for leaving her, are the owners in a condition to enforce the forfeiture against the parent, under the general maritime law? The statute appears to be peremptory. If there is a wilful absence of more than forty-eight hours, and all the requisites of the statute are exactly complied with, the forfeiture is absolute. It is declared that the wages shall be forfeited, and it seems to leave no discretion to the court. Nothing short of a justification of the desertion, such as extreme severity or cruelty on the part of the officers, it seems, will authorize the court to decline to apply the forfeiture. But it is admitted that this case is not brought within the statute.

But the maritime law, as I understand it, is less imperious, and trusts more to the conscience and discretion of the court. Desertion, that is, leaving the vessel with the intention of abandoning it and not returning, works a forfeiture. Such is the general rule. But after a desertion, if the seaman repent and returns, the law is indulgent. It is then considered, not as a case of total forfeiture, but as one for compensation and indemnity to the owners for the loss of service; and the seaman is punished and the owners indemnified by a proper deduction from his wages. The law looks with indulgence on the faults of seamen when they are free from malignity, and arise from thoughtlessness, improvidence, and that want of consideration which is so characteristic of them as a class. In such cases it inflicts its penalties with gentleness and reluctance; and in so doing it will look to the conduct of the officers towards the men, as well as make some allowance for the habitual improvidence of the men. And this it will especially do, when such conduct may in any way have tended to produce the fault which it is sought to punish.

The libellant, the father, has, I think, just cause of complaint in regard to the conduct of the master towards this boy, in two particulars. The first is, that after the desertion, though he remained in port a day before sailing, he made no effort to find him and bring him on board. He knew him to be a minor, intrusted by a parent to his care, and whose conduct is admitted to have been exemplary through the whole of three years and seven months' service. Yet, so far as the evidence goes, he not only made no attempt to find the boy and bring him back, but did not even inquire for him.

The second fault of the master was in the unreasonable advances he made to the boy during the voyage. He knew, or ought to know that he was not earning wages for himself; or if he was ultimately to have them,

that they were claimed by the father, if not for his own use, at least in trust for his son. Young Gifford was furnished with an outfit of clothing for three years, and he remained in the vessel but seven months longer. He could need but little for clothing, and yet the master has charged against him three hundred and fifty dollars. One hundred was paid to him at one time, and fifty at another. What reasonable cause could there be for such advances? It was quite impossible that they could be required for necessaries. And it should be further observed, that the very witnesses whom the owners rely upon to prove the desertion, that is, that Gifford left the vessel with the intention of not returning, also prove that the cause of it was, that he was afraid to go home and meet his father with such advances charged against him.

Whether advances to this amount are legally chargeable on the wages, in a suit by the parent or natural guardian, without some evidence to show that under the circumstances they were reasonable and proper, need not be considered in the present stage of the case.

The only question now to be determined is, whether, there having been an admitted desertion under the general maritime law, but not brought by the proof within the conditions of the statute, the court is bound to visit the offence with the penalty of a forfeiture of the entire wages; or whether, by the maritime law, this court has authority to take into consideration circumstances of palliation, not amounting to a justification, and mitigate the penalty to a reasonable and proper indemnity to the owners, for any damage they have sustained from the delinquency of the seaman. My opinion is, that the court has that power; and that the facts in proof make this a proper case for exercising it.[3] It seems to me to be unconscionable and unjust to mulct this boy, supposing him to have a substantial, though not a legal and technical interest in his wages, of the entire earnings of more than three years and a half laborious and dangerous service, for a fault, blamable indeed, but which was induced mainly, if not exclusively, by the improper conduct of the master. If, in consequence of the desertion, the owners have

---

[3] Since this opinion was delivered, I have been favored through the politeness of the authors with the first volume of Blatchford and Howland's Reports, just issued from the press, containing the admiralty decisions of Judge Betts. It is an addition to our books of admiralty jurisprudence of very great value. The extensive learning and great experience of Judge Betts, give to his opinions a commanding authority. I find that the principal question involved in this case, has been repeatedly decided by him, that the only case in which it is imperative on the court to pronounce for an entire forfeiture of wages, is when the desertion is proved precisely according to the requirements of the statute. The Cadmus [Case No. 2,280]; The Martha [Id. 9,144]; The Elizabeth Frith [Id. 4,361]; The Union [Id. 14,347].

sustained any damage, as is suggested, the proof being produced, it should be deducted from the wages.